THE NATIONAL BANK OF EL PASO v. E. M. FINK ET AL.

No. 66.

**Illegal to Mortgage Salary or Fees of Office.**

It is contrary to public policy in this State for a public officer to assign or give a lien upon his unearned compensation which is given by law, whether such compensation be salary or fees. Any such assignment or lien is void ................................................................ 304

CERTIFIED QUESTION from Court of Civil Appeals for Fourth District, in an appeal from El Paso County.

*Millard Patterson,* and *C. N. Buckler,* for appellant.—The compensation of a public officer is assignable in this State, whether earned or not. Payne v. Mayor of Mobile, 4 Ala., 335; Brackett v. Blake, 7 Metc., 335; Mulhall v. Quinn, 1 Gray, 105; Macomber v. Doane, 2 Allen, 541; Bank v. Hastings, 15 Wis., 83, and cases cited; Crouch v. Martin, 2 Vern., 594; Aston v. Grinnell, 3 Y. & J., 148; Ex Parte Butler, 1 Ark., 210; Herrington v. Kloppugge, 2 B. & B., 678; Galeford v. De Cardwells, 2 Salk., 466.

*T. L. Nugent* and *M. W. Stanton,* for appellees.—1. The instrument referred to evidenced a contract void as being against public policy. Bliss v. Lawrence, 58 N. Y., 442; Bangs v. Dunn, 4 Pac. Rep., 963; Field v. Chipley, 79 Ky., 200; Robertson v. Robinson, 65 Ala., 610; Roiller v. Ames, 22 N. W. Rep., 77; 1 Whart. on Con., sec. 411; Greenw. on Pub. Pol., 1–9, 34, 35, 123, 124, 126, 127; Am. and Eng. Encycl. of Law, "Assignment."

2. The contract being void because against public policy, is incapable of ratification, and no estoppel can be based upon it. Cummings v. Powell, 8 Texas, 85; Bish. on Con., secs. 846, 847, 542, et seq., 614, et seq.; Whart. on Con., sec. 508; Langon & Noble v. Sankey, 7 N. W. Rep., 393; Winfield v. Dodge, 45 Mich., 355; Tucker v. Mowrey, 12 Mich., 378; Troewert v. Deeker, 51 Wis., 46; Cranson v. Goss, 107 Mass., 439; Spare v. Ins. Co., 15 Fed. Rep., 707.

BROWN, ASSOCIATE JUSTICE. — The Court of Civil Appeals of the Fourth Supreme Judicial District certify to this court the following question as involved in the above cause:

" Is it contrary to public policy in this State for a public officer (he having qualified and being in office) to give a lien upon his unearned official compensation ? "

The court makes the following statement of the facts: " The officer in this case was assessor of El Paso County, and to secure his promissory

note he gave appellant bank an express lien on 'whatever funds may be coming to me as the assessor of El Paso County, Texas, from the said county.' "

To this question we answer, that it is contrary to the public policy of this State for a public officer to assign or give a lien upon his unearned compensation which is given by law, whether such compensation be salary or fees, and that any such assignment or lien is void.

In England the authorities seem to be unanimous in holding such assignment void as being contrary to public policy. Flarity v. Odlum, 3 T. R., 681; Banrick v. Read, 1 H. Bl., 627; Arbuckle v. Cowtan, 3 Bos. & P., 328; Wells v. Foster, 8 M. & W., 149; Hill v. Paul, 8 Cl. & Fin., 307; Palmer v. Bates, 2 Brod. & Bing., 673; Liverpool v. Wright, 28 L. J. (N. S.), ch. 871; Davis v. Marlborough, 1 Swanst., 79; Stone v. Lidderdale, 2 Anstr., 533; Lidderdale v. Montrose, 4 T. R., 248.

The American text writers and courts nearly all follow the rule laid down in the English cases. Story's Eq. Jur., sec. 1040d; Mech. on Pub. Off., sec. 874; Greenw. on Pub. Pol., 351; Bliss v. Lawrence, 58 N. Y., 442; Bangs v. Dunn, 66 Cal., 74; Schloss v. Hewlett, 81 Ala., 266; King v. Hawkins, 16 Pac. Rep., 434; Bank v. Wilson, 122 N. Y., 478; Field v. Chipley, 79 Ky., 260; Schwank v. Wykoff, 46 N. J. Eq., 560; Webb v. McCauley, 4 Bush, 10.

In People v. Dayton, 50 Howard Practice Reports, 143, it is held that the assignment of unearned fees does not fall within the rule sustained by the courts as to salaries. But in the case of Bowery National Bank v. Wilson this case was disapproved by the Court of Appeals of that State. It was there held that the same reasons applied against assigning unearned fees as to a salary, and that such assignment is void.

The validity of an assignment of unearned fees was the subject under consideration in Schloss v. Hewlett, 81 Alabama, 266, and the court there held the assignment to be against public policy and void.

Field v. Chipley, 79 Kentucky, 260, was a case involving the validity of an assignment of fees by a clerk, the fees being unearned, and the assignment was held to be void.

There is no distinction in principle between the assignment of unearned fees and the assignment of unearned salary. If anything, the reason is stronger for holding such assignment of fees void than for holding a like assignment of a salary to be invalid; because a salary is a fixed sum for a given time, and there could be no doubt as to the amount to which the assignee would be entitled; while in case of fees to be paid by a county or State, the officials would be required to go into a settlement of the question of amount, with many different persons in some instances, which would confuse and embarrass the public business. Bliss v. Lawrence, 58 N. Y., 442.

In Bank v. Hastings, 15 Wisconsin, 75, the court held that a judge of a

court could assign his salary before it was earned. The only reference made in that case to the great number of cases to the contrary is in this language: "It is true we have been referred to some English cases which hold that the assignment of the pay of officers in the public service, judges' salaries, pensions, etc., was void as being against public policy; but it was not contended that the doctrine of those cases was applicable to the condition of society, or to the principles of law or public policy in this country." So slight a consideration of the number of cases decided by courts of eminent ability shows that the court in that case did not give sufficient thought to the question involved to entitle the opinion to weight.

In the case of Marshall v. Quinn, 1 Gray, 105, which is sometimes referred to as authority for the validity of such assignments, the matter in dispute was neither fees nor salary of a public officer, but was for the price of work done for a city.

Brackett v. Blake, 7 Metcalf, 335, is referred to, but in that case the question of public policy was not considered.

Macomber v. Doane, 2 Allen, 541, was a case in which an officer had assigned his salary, but the only question considered was as to whether or not it was assignable on account of its being a mere possibility. Public policy was not discussed nor mentioned in the case.

The case of Bank v. Hastings is the only case except The People v. Dayton that we find sustaining any such assignment when the case was placed before the court on the ground of violation of public policy. We have seen that the latter case was overruled, which leaves the former alone to support the assignment of such claims.

Flarity v. Odlum, supra, is the leading English case on this subject. The assignability of the half-pay of an officer was in question, and Lord Kenyon said: "Emoluments of this sort are granted for the dignity of the State and for the decent support of those persons who are engaged in the service of it. It would therefore be highly impolitic to permit them to be assigned; for persons who are liable to be called out in the service of their country ought not to be taken from a state of poverty."

Bliss v. Lawrence, supra, is the leading American case on the subject. The court, discussing the question of public policy, gives this sound reason for its decision: "The public service is protected by protecting those engaged in performing public duties; and this not upon the ground of their private interests, but upon that of the necessity of securing the efficiency of the public service by seeing to it that the funds provided for its maintainance should be received by those who are to perform the work, at such periods as the law had appointed for their payment."

The court in Schloss v. Hewlett, 81 Alabama, 270, holding that the assignment by a public officer of unearned fees was contrary to public

policy and void, said: " It is easy to see how great abuses would follow if such transfers were permitted. Not only would there exist a constant temptation to anticipate future earnings under the stress of present financial pressure, at usurious rates of discount, but when completed, one of the strongest incentives to industrious exertion—the expectation of pecuniary reward in the near future—would be gone."

Dignity of office, in the sense that the term is used in the English cases, does not exist in this country; and yet there is a dignity, or at least should be, attending every office, in that sense that a proper and independent discharge of its duties inspires respect for the officer and for the office. In this more important sense of dignity, the same reason can be well applied in this country. The law provides compensation for official service in order to enable the officer to be free from the cares of making provision for his own support and that of his family during the term of office, that he may devote his whole time to the discharge of the duties of his office. If such officer is permitted to assign his salary or fees before earned, he may thus deprive himself and family of this support, and to secure it he must look to some other source, thereby depriving the State of the careful and thoughtful attention that the public interest demands. A hungry man is weak in the presence of temptation, no matter what may be his ability to withstand it in a state of independence.

To deprive such an officer of the means of daily support for himself and family, while his time must be given to work in which he can expect no relief, would be a strong inducement to resort to methods which, if not dishonest, would at least be inconsistent with the public good, and the dignity of his office be destroyed by losing the respect and confidence of the public.

In this State the terms of office are short and elections frequent. The man in office who might be indebted to a creditor of influence and wealth might be greatly tempted to yield to the demands of such creditor in order to secure his influence in the next election; and a creditor having an insolvent debtor a candidate for office would have a strong incentive to lend his aid and influence to his election, in order to secure his debt by this means. It may be said that these are mere probabilities, but they are not *impossibilities*, nor are they too remote for consideration in this connection. There are other reasons which suggest themselves why such assignments should not be permitted, but these are sufficient to show the rule to be well founded.

This opinion will be certified to the Court of Civil Appeals for its observance.

Delivered December 21, 1893.