## LEWIS v. OATES.

### No. 4419.

Court of Civil Appeals of Texas. El Paso.
May 10, 1945.

Rehearing Denied May 31, 1945.

Garland Casebier, of Fort Stockton, for appellant.

Travers Crumpton, of Fort Stockton, for appellee.

SUTTON, Justice.

This appeal is from the 112th District Court of Pecos County.

Appellant was plaintiff in the trial court and the parties will be designated here as there. The trial was to the court and judgment rendered in favor of the defendant, from which the plaintiff has appealed.

Plaintiff has a general pleading in trespass to try title wherein he seeks to recover an undivided one-eighth (⅛th) interest in the oil and gas in and under a described 640-acre section of land in Pecos County by virtue of a mineral conveyance executed in his favor by the defendant and his wife dated the 25th day of September 1929, and under the general warranty therein and damages.

In a specific pleading he seeks to establish the asserted mineral estate and recover a portion of the bonus and renewal rentals collected by the defendant under an oil and gas lease dated the 29th day of January, 1936, under the terms of a contract executed by the defendant simultaneously with the mineral conveyance.

The defendant answered with a special exception to the effect the title pleaded is insufficient to support the cause of action; with the two and four year statutes of limitation; a plea of not guilty, and a special answer to the effect the instruments relied upon are void because the oil and gas lease in existence at the time such instruments were executed has long since expired by its terms; that the contract sued on is void because in violation of the rule against perpetuities; is incapable of enforcement and detrimental to the State and its public school fund and the public welfare in general.

The judgment is that plaintiff take nothing; that the purported mineral conveyance be cancelled as void from its inception, and for costs.

There are no findings and conclusions.

Plaintiff has three points of error: That the court erred in holding the contract sued on is contrary to public policy; that the court erred in denying relief under the general warranty, which is claimed sufficient to pass an after-acquired title; and in denying a recovery on the contract.

The agreed facts are the lands involved in the suit are mineral classified; that the land was under a valid oil and gas lease executed by the defendant as agent for the State at the time the mineral conveyance and contract were executed; that no oil or gas was ever produced from said land and the lease expired by virtue of its terms; that a new lease was executed January 28, 1936, on said land which is in force and effect; that neither oil nor gas has been produced under said last mentioned lease; that plaintiff received his pro rata part of the delay rentals under the first lease; that all bonus money and delay rentals under the second and existing lease have been paid to the defendant and retained by him.

The mineral conveyance purported to convey: "An undivided one-eighth (⅛th) interest in and to all of the oil, gas and other minerals in and under and that may be produced from" the lands involved, describing them.

It further recited the existence of the oil and gas lease and provided: " * * * this sale is made subject to said lease, but covers and includes ⅛th of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease. * * *" and that: " * * * one-eighth of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Tryon Lewis. * * *" and in the event the said lease for any reason is forfeited "the lease interests and all future rentals" for oil, gas and mineral privileges shall be owned jointly by the respective record owners, the plaintiff owning an undivided one-eighth thereof together with a like interest in all future rents.

The contract recites the execution of the mineral conveyance; the classification of the land; that the same is involved in current litigation under the Relinquishment

Act, which gives the land owner 15/16ths of the oil and gas, and that the question may arise as to whether the land owner owns any interest in the minerals after the expiration of the lease and whether or not it will revert to the State. The instrument then recites:

"Now, therefore, know all men by these presents: That I, John S. Oates, having sold to Tryon Lewis, perpetual royalty or perpetual mineral interest as shown by the above mineral deed, do hereby agree and bind myself my heirs, executors and assigns, to protect the said Tryon Lewis in the interest so conveyed as above described in the following manner:

"If the Supreme Court rules that all minerals under the above described Section of land, shall revert to the State of Texas, at the expiration of the present lease now in good standing, then I hereby agree and bind myself, my heirs, executors and assigns, to carry the said Tryon Lewis and his heirs, executors and assigns to the extent of the interest outlined in the above mentioned mineral deed, in the sale of any future leased on the above described land and upon the execution of such lease or leases, the interest so conveyed in the above mentioned mineral deed, will again be in force and effect in the said Tryon Lewis, his heirs," etc.

Plaintiff testified he paid $6 per royalty acre or a total of $480 for such interest. The defendant testified he had no recollection of receiving any money and had no record of the receipt of any, and no recollection of executing the instruments but the signatures affixed to them were his.

The rentals collected and due under the existing lease are at the rate of 25¢ per acre per annum.

The members of this court are not in complete agreement on all the issues presented here. The court is unanimous as to the disposition of the case.

 It was determined and decided in Greene v. Robison, 117 Tex. 516, 8 S.W. 2d 655, 660, that the surface owner of mineral classified land has no interest in the mineral estate —the oil and gas. It has been repeated since then so many times as to make it elementary. In that case it is put in one terse sentence, thus: "The landowner acquires no estate in the oil and gas." It is equally as plain in Lemar v. Garner, 121 Tex. 502, 50 S.W.2d 769, and Shell Petroleum Corporation v. Tippett, Tex.Civ.

App., 103 S.W.2d 448 (error refused). It is as well settled that what the surface owner does get is an equal division with the State of the bonus, delay rentals and royalty payments by way of compensation for his services as agent for the State and damage to his surface estate. Lemar v. Garner, supra, declared those payments to be property rights and assignable by the surface owner.

 During the life of the first lease, plaintiff received his pro rata part of the delay rentals, which is clearly all he was entitled to under the terms of his mineral conveyance, or assignment. No question then arose between the parties. Under this instrument, had the land produced oil, plaintiff would have received his one-eighth of the oil and gas royalty or gas rental. Lemar v. Garner, supra. He never did acquire any estate in the oil and gas, because the defendant had none. He could not acquire a one-eighth of the proceeds of the bonus, royalty, and delay rental payments, because his assignor, the defendant, was entitled to but one-sixteenth. The very terms of the instrument limited it to "one-eighth of the oil royalty, gas rental or royalty due and to be paid under the terms of said lease and one-eighth of the money rentals". This is exactly what he got, and the claim under the warranty cannot prevail, because there was no title to an estate in the oil and gas to warrant—the defendant had none and could acquire none under the then and now existing law. The first interest attempted to be conveyed under the mineral conveyance, the one-eighth of all the oil, gas and other minerals, is the possible reverter of the minerals in place under the lands described. The other portion of the instrument conveyed one-eighth of the royalties and rentals during the life of the lease. Hoffman et al. v. Magnolia Petroleum Co., Tex.Com.App., 273 S. W. 828. This case has been followed many times. The material terms of the instrument there under consideration were the same as those found in the mineral conveyance here.

 The question then arises: What rights, if any, are created in plaintiff under the terms of the contract? It is evident the parties were trying to secure to plaintiff a one sixty-fourth interest in the benefits or funds which the defendant might thereafter receive by virtue of his surface ownership. They knew, or anticipated, the decision in Greene v. Robison, supra, and under-

took to protect plaintiff in his purchase. It is plain enough the defendant undertook to obligate himself to divide the moneys accruing to him under any future lease or leases made by him upon the same terms outlined in the mineral conveyance. The estate first attempted to be vested was outstanding in the lessee. The rights acquired were those acquired under the terms of the then existing lease. It is said in Lemar v. Garner, supra [121 Tex. 502, 50 S.W. 2d 773], that "Prior to the making of the mineral lease, the owner of the land has no right to assign or convey any mineral rights in the property." It might be said the surface owner never acquires any estate or rights in the property but only in the moneys accruing under the terms of a lease. It is true in that case the facts were different from those under consideration here, and the language just quoted may strictly be dicta, but it is plain and unequivocal and we construe it as intended to apply to the funds collectible under the terms of a lease, and because of that statement we unanimously agree the case should be affirmed.

■ A majority of the court are of the opinion the contract violates public policy and cannot be enforced, but the writer is not of that opinion. The majority conclusion is based upon the proposition the defendant's incentive to co-operate with the State in making a lease would be largely or entirely taken away if he assigns any part or the whole of the compensation he is entitled to, and rely upon such authorities as 6 C.J.S., Assignments, §§ 21, 22, pp. 1068, 1069, and State Nat. Bank of El Paso v. Fink, 86 Tex. 303, 24 S.W. 256 and, Tex. Civ.App., 24 S.W. 937.

It seems to the writer this presupposes the surface owner, if he assigns for a consideration some part or the whole of his compensation, will be derelict in the performance of his obligation and duty. It is thought the very substantial reasons applicable in the cases above referred to are not applicable here. The defendant is in no wise dependent upon the compensation provided by the construction of the Relinquishment Act. As said in Greene v. Robison, the surface owner is the mere agent of the State for the purpose of selling the oil and gas for the highest price obtainable but not less than the minimum fixed by law. It seems to the writer the relationship existing between the State as the owner of the minerals and its agent, the surface owner, is not unlike that existing between any other owner and his agent for the sale of real estate. If the surface owner sells a part or the whole of his compensation then there are two or more persons or another interested in the development of the property and a sale of the oil and gas for the best obtainable price.

But for Lemar v. Garner, in the opinion of the writer, it would be difficult to distinguish this case from such cases as Popplewell v. Buchanan, Tex.Civ.App., 204 S. W. 874 (error refused), wherein it is held a real estate agent may assign a part of his compensation—commissions—though his contract be exclusive and the contract itself not assignable. In such cases it is not essential that the title be in the defendant at the time the assignment and sale is made. Hufstutler v. Grayburg Oil Co., Tex.Com. App., 48 S.W.2d 591; Trice v. Cone, Tex. Civ.App., 163 S.W. 587. See also 6 C.J.S., Assignments, §§ 18 and 19, p. 1062.

It is said in Lemar v. Garner, supra, that it is not the policy of the law to favor restraints upon the alienation of property. The same might be said of the freedom and right of contract and it is a little difficult for the writer to agree the limitation put on the right of contract in this case is admissible. If any other than the State of Texas were the defendant's principal, then there could be little doubt but that the contract would be enforced; hence the difficulty in declining to enforce it here.

Plaintiff's pleading is not what it might be, but this case is of such importance we have concluded to place the affirmance of the trial court's judgment on the two propositions of law indicated, that the defendant cannot assign any interest he may have or be entitled to before the making of an oil and gas lease, and the contract is against public policy, rather than on any weakness of pleading.

For the reasons indicated, the judgment of the trial court is affirmed.