Tracy **SUTTLES** and Cynthia Suttles, Appellants,

v.

**VESTIN REALTY MORTGAGE I, INC.,** Vestin Realty Mortgage II, Inc., and Vestin Fund, III, LLC, Appellees.

**In re Tracy Suttles and Cynthia Suttles, Relators.**

Nos. 01–09–01023–CV, 01–10–00071–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 22, 2010.

**414**

Jeffrey L. Gilman, Gilman & Gilman, P.C., Houston, TX, for Appellants.

James C. Walk, Keith Miles Aurzada, Bryan Cave, L.L.P., Dallas, TX, for Appellees.

Panel consists of Chief Justice RADACK, and Justices ALCALA, and HIGLEY.

### OPINION

ELSA ALCALA, Justice.

In this appeal and petition for writ of mandamus,[1] appellants and relators, Tracy and Cynthia Suttles seek relief from the trial court's entry of a turnover order appointing a receiver and master in chan-

---

1. The appeal is cause number 01–09–01023–CV. The petition for writ of mandamus is cause number 01–10–0071–CV. The underlying case is *Vestin Realty Mortgage I, Inc., Vestin Realty Mortgage II, Inc., and Vestin Fund, III, LLC v. Tracy Suttles, Cynthia Sut-* *tles, Shamrock Tower, LP, and Pirates Lake, LTD.,* cause number 2009–02857, in the 113th Judicial District Court of Harris County, Texas, the Honorable Patricia Hancock, presiding.

cery. Appellees and real parties in interest, Vestin Realty Mortgage I, Inc., Vestin Realty Mortgage II, Inc., and Vestin Fund III, LLC (collectively "Vestin"), sought to enforce a judgment against the Suttles and two other judgment debtors.[2] The trial court entered a turnover order appointing a receiver and master in chancery. In their appeal, the Suttles contend the trial court erred by entering the turnover order appointing a receiver because Vestin presented no evidence of the facts required by the turnover statute[3] and the turnover order was sought for a purpose not authorized by the statute. The Suttles also challenge the appointment of the receiver on the grounds that the trial court gave the receiver power not authorized by statute; created a conflict of interest by appointing the same person as master and receiver; and ordered compensation for the receiver before any work had been done. In their petition for writ of mandamus, the Suttles contend the trial court erred by appointing a master because the case does not meet the requirements of Texas Rule of Civil Procedure 171, the master's powers to redirect and open the Suttles' mail violates federal postal law, and the same person is appointed both the master and receiver. We conclude that the trial court abused its discretion because the record contains no evidence showing the requirements for a turnover order or the appointment of a master exist. We reverse the trial court's turnover order and remand to the trial court. We conditionally grant the petition for writ of mandamus concerning the appointment of the master.

## Background

Vestin obtained a $4,907,012.26 judgment against the Suttles, Shamrock Tower, L.P., and Pirate's Lake, Ltd., in a suit in Nevada. Vestin domesticated its judgment in January 2009 and served written post-judgment discovery on the Suttles in March 2009. The Suttles failed to respond to the post-judgment discovery, but Vestin did not file a motion to compel. In November 2009, Vestin filed an application for post-judgment turnover order and appointment of a receiver and master. At the hearing, Vestin presented evidence, providing a list of businesses listing Tracy as a director, member or officer; records showing NBC Creative Development, LLC, one of Tracy's companies, is the owner of record of the Suttles' residence; a special warranty deed from Jetall Companies to NBC Creative Developments, LLC; and records showing the Suttles own 15 properties in Victoria County, Texas.

On November 16, 2009, the trial court signed an order appointing Riecke Baumann as receiver and master. Eight days later, the trial court signed an ex parte amended turnover appointing Baumann receiver and master. On three separate occasions in December 2009 and January 2010, the Suttles appeared before Baumann, without objection, to provide deposition testimony. The Suttles petitioned for mandamus relief on February 2, 2010, and seek to vacate the appointment of a master. The Suttles also filed an appeal challenging the turnover order and the appointment of a receiver.

## Turnover Order

In their appeal, the Suttles raise four issues asserting the trial court erred when it appointed Baumann as receiver.

---

2. Shamrock Tower, LP and Pirates Lake, LTD were named as defendants in the underlying cause and the trial court's order but have not appealed.

3. *See* TEX. CIV. PRAC. & REM CODE ANN § 31.002 (Vernon 2008).

## A. Standard of Review and Applicable Law

We review the entry of a turnover order for an abuse of discretion. *Tanner v. McCarthy*, 274 S.W.3d 311, 320 (Tex.App.-Houston [1st Dist.] 2008, no pet.). A turnover order is proper if the conditions of the turnover statute, Texas Civil Practice and Remedies Code section 31.002, are met. TEX. CIV. PRAC. & REM.CODE ANN. § 31.002 (Vernon 2008); *Tanner*, 274 S.W.3d at 322. The trial court "must have some evidence before it that establishes that the necessary conditions for the application of 31.002 exist." *Tanner*, 274 S.W.3d at 322. The conditions that must be met are:

(1) the entity that is to receive aid must be a judgment creditor;

(2) the court that would grant aid must be one of appropriate jurisdiction;

(3) the aid to be given must be in order to reach property to obtain satisfaction on the judgment; and

(4) the judgment debtor must own property (including present or future rights to property) that:

 (a) cannot be readily attached or levied on by ordinary legal process and

 (b) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(a); *Tanner*, 274 S.W.3d at 322. Under the condition of (4)(a) above, property that cannot be readily attached or levied on by ordinary legal process includes property such as shares of stock and accounts receivable. *See Arndt v. Nat'l Supply Co.*, 650 S.W.2d 547, 548 (Tex.App.-Houston [14th Dist.] 1983, writ ref'd n.r.e.). Here, the dispute concerns whether Vestin presented evidence to support a finding under (4)(a) that the Suttles owned property that cannot be readily at- tached or levied on by ordinary legal process.

## B. Lack of Evidence to Support Turnover Order

In their first issue, the Suttles contend the trial court abused its discretion by issuing the turnover order and appointing a receiver because there is no evidence that the Suttles own any non-exempt property that cannot be readily attached or levied on by ordinary legal process. To support its application for the turnover order, Vestin introduced evidence that (1) Tracy was a director, member, or officer of certain businesses, (2) corporations associated with Tracy owned the Suttles's residence, and (3) the Suttles own 15 properties in Victoria County, Texas.

### 1. Director, Officer, or Member of Business

In support of its application for a turnover order, Vestin introduced a list of businesses from the Texas Secretary of State's website listing Tracy as a director, member or officer. The fact that Tracy is listed as a director, officer, or member, however, is no evidence of his ownership of those businesses. The Texas Business Organizations Code states that the right to manage a company is not an "ownership interest." TEX. BUS. ORGS.CODE ANN. § 1.002(64) (Vernon 2006); *see also* TEX. BUS. ORGS.CODE ANN. § 1.002(54) (stating member's right to participate in management of limited liability company is not membership interest). Also, the Code specifically provides that being a shareholder is not a requirement to serve as a director. TEX. BUS. ORGS.CODE ANN. § 21.402 (Vernon 2006) ("Unless the certificate of formation or bylaws of a corporation provide otherwise, a person is not required to be ... a shareholder of the corporation to serve as a director."). Similarly, with respect to a limited liability company, a person may be

a member without acquiring a membership interest. TEX. BUS. ORGS.CODE ANN. § 101.102(c) (Vernon 2006) ("If one or more persons own a membership interest in a limited liability company, the company agreement may provide for a person to be admitted to the company as a member without acquiring a membership interest in the company.").

## 2. Ownership of Residence Occupied by Suttles

 Vestin also introduced records from the Harris County Appraisal District showing that one of Tracy's companies (NBC Creative Development, LLC) is the owner of record of the Suttles' residence. Vestin also introduced a special warranty deed conveying the residence from Jetall Companies to NBC Creative Developments, LLC. The fact that the Harris County Appraisal District lists a company as the owner of the Suttles' residence is no evidence that the Suttles own shares of that company. Similarly, a deed conveying the property from Jetall Companies to NBC Creative Developments, LLC is no evidence that the Suttles own shares in either company.

## 3. The Properties in Victoria County, Texas

 Vestin also introduced Victoria County Appraisal District real property account information listing numerous properties in one or both of the Suttles' names. However, to meet the requirement of the turnover statute, the property must be a type of property that "cannot be readily attached or levied on by ordinary legal process." Although the turnover statute does not state the types of property that "cannot be readily attached or levied on by ordinary legal process," the legislative history and cases indicates that the statute was created to reach types of property other than the real property in this case. Committee reports from the Texas House and Senate state the statute was enacted to provide judgment creditors with a remedy to reach a judgment debtor's non-exempt property in cases where traditional methods had proved to be inadequate, including situations where the debtor has property outside the state of Texas; where the debtor owns interests in intangible property, such as contract rights receivable, accounts receivable, commissions receivable, and future rights to payments; and where the debtor owns interests in other property that could be easily hidden from a levying officer, such as negotiable instruments, corporate stocks, and corporate securities. *See Davis v. Raborn,* 754 S.W.2d 481, 483 (Tex.App.-Houston [1st Dist.] 1988), *vacated upon settlement,* 795 S.W.2d 716 (Tex.1990) (citing David Hittner, *Texas Post–Judgment Turnover and Receivership Statutes,* 45 TEX. B.J. 417, 417–18 (1982)). Real property within Texas may be levied on by ordinary legal process. *See* TEX.R. CIV. P. 621, 629, 630, 637, and 639 (providing for levy of execution to satisfy money judgments, which includes "any sheriff or any constable within the State of Texas" levying on real property owned by judgment debtor). Additionally, real property in Texas may be attached. *See* TEX.R. CIV. P. 593 (writ of attachment "shall be directed to the sheriff or any constable within the State of Texas" and "shall command him to attach and hold ... the property of the defendant ... as shall be found within his county"); *see also Pillitteri v. Brown,* 165 S.W.3d 715, 722 (Tex.App.-Dallas 2004, no pet.) (noting real property outside of Texas is subject to turnover order because "ordinary legal process by which property is attached or levied upon" is writ and writ directs "a sheriff or constable in the State of Texas ... to attach and hold the defendant's property as shall be found within his coun-

ty"). Because the Victoria County property is real property located within Texas, it may be readily attached or levied on by ordinary legal process. *See* Tex.R. Civ. P. 593, 639; *see also Pillitteri,* 165 S.W.3d at 722. Thus, the requirements of the turnover statute are not met. *See* Tex. Civ. Prac. & Rem.Code Ann. § 31.002(a)(1) (providing turnover order available if judgment debtor owns property that "cannot be attached or levied on by ordinary legal process").

With respect to the Victoria County property, Vestin repeatedly refers to it as "rental property," presumably in an effort to characterize the rental income as "accounts receivable"—a type of property to which the turnover statute applies. *See Davis,* 754 S.W.2d at 483; *Arndt,* 650 S.W.2d at 548. However, the only evidence introduced is the list stating the Suttles are the owners; the record contains no evidence that the properties are rental properties or that the Suttles have a right to rental income from these properties.

In this case, the trial court was not presented with any evidence to satisfy the requirements of the turnover statute that the Suttles own non-exempt property that cannot be readily attached or levied on by ordinary legal process. Therefore, we hold that, based on the evidence presented, the trial court erred by issuing the turnover order. *Tanner,* 274 S.W.3d at 321. We sustain the Suttles first issue. Because we reverse the trial court on this issue, we do not address the Suttles' remaining issues presenting alternate ground to reverse the trial court. *See Control Solutions, Inc. v. Gharda Chems. Ltd.,* 245 S.W.3d 550, 563 n. 4 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (citing Tex.R.App. P. 47.1).

## Appointment of Master

In their petition for writ of mandamus, the Suttles seek relief from the trial court's order appointing Baumann as master.

### A. Waiver

■ As a threshold issue, Vestin contends that the Suttles have waived any objections to the appointment of a master because they failed to object to Baumann's appointment before taking part in proceedings before Baumann. Specifically, Vestin points to the three occasions the Suttles appeared before him to offer deposition testimony. The Suttles respond that they did not waive their objections to the appointment of a master because (1) they objected to the appointment of a master at the November 16, 2009 hearing, well before the three depositions, and (2) the depositions were conducted by Baumann in his capacity as receiver rather than as master.

■ "[A] party objecting to a master's appointment must make an objection not within some arbitrary time period, but before it has taken part in proceedings before the master or before the parties, the master, and the court have acted in reliance on the master's appointment." *Owens–Corning Fiberglas Corp. v. Caldwell,* 830 S.W.2d 622, 625 (Tex.App.-Houston [1st Dist.] 1991, orig. proceeding). Here, the Suttles objected to the appointment of a master at the November 16, 2009 hearing. Furthermore, because Baumann is the master and receiver, the Suttles' cooperation with Baumann in his role as receiver cannot waive their objection to Baumann's role as master. Accordingly, the Suttles did not waive their right to object to Baumann's appointment. *See id.*

### B. Standard of Review and Texas Rule of Civil Procedure 171

 When a trial court improperly appoints a master in chancery, mandamus is the proper remedy. *Id.* at 324. Mandamus issues to correct a "clear abuse of discretion" when there is no adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). Clear abuse of discretion occurs when a trial court "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* (citing *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding)). The reviewing court may not substitute its judgment for that of the trial court when reviewing factual issues. *Id.* at 839–40. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless the decision is shown to be arbitrary and unreasonable. *Id.* at 840. A trial court does not abuse its discretion so long as there is some evidence of a substantive and probative character to support its decision. *Tanner,* 274 S.W.3d at 321.

 The appointment of a master in chancery, unless authorized by statute or consented to by the parties, must comply with Texas Rule of Civil Procedure 171. *Simpson v. Canales,* 806 S.W.2d 802, 810 (Tex.1991). Rule 171 provides, in relevant part: "The court may, in exceptional cases, for good cause appoint a master in chancery...." Tex.R. Civ. P. 171. "The appointment of a master lies within the sound discretion of the trial court and should not be reversed except for a clear abuse of that discretion." *Simpson v. Canales,* 806 S.W.2d 802, 811 (Tex.1991). "The 'exceptional cases/good cause' criterion of Rule 171 is not susceptible of precise definition." *Id.* Although the trial court may consider the complexity of the case, the rule's standards "cannot be met merely by showing that a case is complicated or time-consuming." *Id.*

In deciding the "exceptional case/good cause" requirement was not met in *Simpson,* the supreme court noted that the underlying case was a toxic tort case involving one plaintiff and 18 defendants; in the first 10 months that the case was pending, eight discovery motions were filed; the supreme court noted that none of the motions were "especially complex"; and the trial court did not hear the merits of any pending discovery dispute before appointing the master. *Simpson,* 806 S.W.2d at 811. In following *Simpson,* this Court found a case with five defendants, in which one set of requests for admissions, one set of interrogatories to all defendants, and seven sets of requests for production were served, and two motions to compel were submitted to the master, was not exceptional and the appointment of a master was an abuse of discretion. *Owens–Corning Fiberglas Corp.,* 830 S.W.2d at 626–27.

Here, in the turnover order appointing the master, the trial court stated this case was exceptional "due to its complexity and the intensity needed to enforce the judgment." This recital is similar to the recital found wanting in *Simpson.* In that case, the trial court stated good cause existed to appoint a master "[b]ecause of the complex nature of the case and the numerous pretrial issues to be disposed of." *Simpson,* 806 S.W.2d at 811. In addition, the facts of this case bring it within the application of *Simpson.* This case involves four judgment debtors. Vestin served two requests for production, one each to Mr. Suttles and Mrs. Suttles. The Suttles did not respond. Vestin did not file a motion to compel and, consequently, the trial court did not hold a hearing on the motion to compel. Finally, unlike *Simpson,* a toxic tort case involving 18 defendants, this case is limited to post-

judgment enforcement actions involving four defendants, two of whom are husband and wife. This case falls far short of the complexity of *Simpson* and *Owens–Corning,* cases that the Texas supreme court and this Court found were not exceptional, concluding the trial court in each case abused its discretion in appointing a master.

Vestin asserts this case is exceptional because the Suttles are "officers, directors or members of at least twenty-five Texas businesses, own approximately fifteen non-exempt rental properties in Victoria county and resided in a home for which the owner of record is NBC Creative Development, LLC (one of [the Suttles'] companies)." As noted above, the fact that the Suttles are officers, directors, or members of business entities is no evidence that the Suttles own an interest in those entities. Also, the fact that the Suttles own property is not evidence that the property is "rental property." These purported complexities of this case find no evidentiary support in the record. *See Tanner,* 274 S.W.3d at 324 (trial court abuses its discretion if no evidence supports decision)

Vestin also attempts to distinguish this case from *Simpson* and *Owens–Corning* based on the scope of the orders involved. In those cases the master was appointed to hear all discovery disputes. *Simpson,* 806 S.W.2d at 811; *Owens–Corning Fiberglas Corp.,* 830 S.W.2d at 626. The supreme court and this Court found this type of "blanket order" inappropriate because there was no showing that "the future conduct of discovery will justify supervision by a master rather than the court." *Simpson,* 806 S.W.2d at 811; *see also Owens–Corning Fiberglas Corp.,* 830 S.W.2d at 627 (noting that blanket order referring discovery to master inappropriate in case less complex than *Simpson* ). Here, Vestin asserts the master was not appointed

"to hear **all** pretrial discovery matters." However, the master was given powers much broader than a master appointed for pre-trial discovery only. Here, among other things, the master was granted the following powers:

> Ordering the turnover before him of assets, evidence and documents upon all matters he feels pertain to compliance with this order . . .;

> Scheduling hearings and meetings and directing parties and witnesses to give testimony at such hearings and meetings and to rule upon the admissibility of evidence at such hearings; [and]

> Placing witnesses under oath and examining them himself, or through his agents[.]

The trial court's order also provides, "An order from the Master, made pursuant to this order, is a Court Order." Thus, the order here is much broader than an order referring all pre-trial discovery matters to a master. *See Simpson,* 806 S.W.2d at 811; *Owens–Corning Fiberglas Corp.,* 830 S.W.2d at 626.

For the foregoing reasons, we conclude this case does not meet the "exceptional case/good cause" requirement of Rule 171 and the trial court abused its discretion in appointing a master. *See Simpson,* 806 S.W.2d at 811. Furthermore, the master was appointed as part of the turnover order, in order to assist the trial court and "conserve the resources of the [trial court] in routine post judgment matters" in enforcing the judgment against the Suttles. We have already held the trial court abused its discretion in issuing the turnover order; this is an additional reason that portion of the turnover order appointing a master constitutes an abuse of discretion. We do not address the other issues in the Suttles' petition for writ of mandamus contending the trial court erred by granting the master the power to open

the Suttles' mail and by appointing the same person as receiver and master.

## Conclusion

We reverse the order of the trial court and remand this cause. We conditionally grant the Suttles' petition for writ of mandamus and direct the trial court to vacate its order appointing a master. We are confident the trial court will promptly comply, and our writ will issue only if it does not.